UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ANGALEE MORRISON | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO:  3:12-cv-117 |
| | ) |
| WAL-MART. | ) |
| | ) |
|     Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  Nature of the Case**

1. Plaintiff, Angalee Morrison ("Morrison"), brings this Complaint against Defendant, Wal-Mart ("Defendant"), for their discrimination against Morrison based on her disability in violation of the American with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 et. seq.

**II.  Parties**

2. Morrison has resided within the State of Indiana at all relevant times hereto.

3. Defendant is a corporation doing substantial business in the Southern District of Indiana.

**III.  Jurisdiction and Venue**

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343 and 42 U.S.C. § 12117.

5. Morrison is a qualified individual with a disability as that term is defined by the ADA, 42 U.S.C. § 12102(2)(c).  At all relevant times, Defendant had knowledge of Morrison's

disability and/or it regarded Morrison as being disabled and/or Morrison has a record of being disabled.

6. Defendant is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A).

7. Morrison satisfied her obligation to exhaust her administrative remedies having timely filed U.S. Equal Employment Opportunity Commission Charges alleging disability discrimination and retaliation against Defendant. Morrison received her Notice of Suit Rights and timely files this action.

8. All events, transactions, and occurrences pertinent to this lawsuit have occurred in the legal environs of the Southern District of Indiana, thus venue in this Court is proper.

### IV. Factual Allegations

9. Morrison was hired by Defendant in or about 2009 as a cashier, shortly thereafter she was transferred to customer service but her secondary duty remained as cashier.

10. At all times relevant, Morrison met or exceeded the Defendant's legitimate performance expectations.

11. Morrison has bilateral shoulder instability which causes a restricted range of motion in both of her shoulders that leads to severe pain and chronic dislocations.

12. In or about September of 2010, Morrison had surgery on her right shoulder to try and ease the problems associated with her bilateral shoulder instability.

13. Upon returning to work as a cashier, Morrison was originally required to wear a sling. However, Morrison's medical provider informed her that in order to aid in her recovery, Morrison should stop wearing the sling allowing her arm to hang to her side but still not use that arm. Morrison's assistant manager ordered her to continue to wear the sling because customers could become upset that she was not working fast enough without any injury visible to them.

Morrison was advised to continue physical therapy for her shoulder, but Defendant would not allow her to miss any days of work to attend her physical therapy sessions.  In turn, Morrison could not complete her ongoing physical therapy as directed by her doctor.

14. In or about March of 2011, Morrison began to experience pain in her shoulders as a result of being forced to carry heavy objects and while working her secondary duty as a cashier.

15. Morrison made a formal request for an accommodation, pursuant to Defendant's policies, that she be relieved of her secondary cashier duties that required her to scan items in a side-to-side motion.

16. Defendant denied Morrison's formal request for an accommodation stating, "In order to be eligible for an accommodation, an associate's impairment and/or limitation must substantially limit a major life activity and be more than a temporary impairment.  Your restriction(s) does not appear to substantially limit a major life activity.  In addition, granting your request would appear to excuse the performance of an essential job function."

17. The true reason for the denial was that several co-workers had complained about her request arguing that she would be getting preferential treatment due to her shoulder problems, so it was denied.

18. Morrison also requested for an accommodation by transferring her to work solely at the customer service counter, and to remove her secondary duty as a cashier from her list of job duties.  Once again, Morrison's co-workers complained about possible preferential treatment, so this request was denied as well.

19. Shortly after the denial of the transfer request.  Defendant told Morrison they could not accommodate her because every store position required that she be able to lift twenty-

five (25) pounds above her head.  Ms. Morrison's shoulders prevent her from being able to lift that much weight over her head.  However, several of the store positions Morrison could have been transferred to do not require the lifting of that much weight.

20.     Defendant retaliated against Morrison for her accommodation requests and ordered her to continue her secondary duties as a cashier.

21.     Morrison was forced to take unpaid medical leave from June of 2011 to December of 2011, to allow her shoulders to recover from the damage caused by the repeated work as a cashier.

22.     Defendant continued to retaliate against Morrison during this time, ordering her to submit medical information from her doctor every thirty (30) days or lose her right to unpaid medical leave.  If she lost her unpaid medical leave, she would be required to report to work or be terminated.  Ms. Morrison continued to pay for the visits to her doctor to have the medical information reports filled out.  Defendant would send the required forms directly to her doctor; however, one month Defendant retaliated against Morrison and sent the required forms to Morrison's residence directly by FedEx.  In that instance, the forms arrived at her residence the same day that they were due back to the Defendant, making it impossible for Morrison to return them filled out in time.  Morrison believed at that time that she lost her right to unpaid medical leave and would soon be terminated, because her shoulder problems still prevented her from returning to work.

23.      Defendant continued to retaliate against Morrison and terminated her sometime in early 2012.  The exact date of termination is unclear as Morrison was never informed that she was terminated until she filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

4

24. Morrison was terminated due to her request for accommodations concerning her disability.

## V. Legal Allegations

### Count I. ADA – Discrimination; Failure to Engage in the Interactive Process; and Failure to Accommodate Claim

25. Morrison hereby incorporates paragraphs one (1) through twenty-four (24) of her Complaint as if the same were set forth at length herein.

26. Defendant violated Morrison's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. by discriminating against her based on her disability, failing to engage in the interactive process and failing to provide a reasonable accommodation for her disability.

27. Defendant's actions were intentional, willful and in reckless disregard of Morrison's rights as protected by the ADA.

28. Morrison has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### Count II. ADA—Retaliation

29. Morrison hereby incorporates paragraphs one (1) through twenty-eight (28) of her Complaint as if the same were set forth at length herein.

30. Defendant retaliated against Morrison and her requests for reasonable accommodations concerning her disability by ordering her to take unpaid medical leave, requiring her to constantly pay money to visit her doctor to fill out the proper forms so she could stay on unpaid medical leave and ultimately, terminating her.

31. Defendant's actions were intentional, willful and in reckless disregard of Morrison's rights as protected by the ADA.

32. Morrison has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## VI. Requested Relief

WHEREFORE, Plaintiff, Angalee Morrison, by counsel, respectfully requests that this Court find for Plaintiff and:

1. Permanently enjoin Defendants from engaging in any employment policy or practice that discriminates against any employee on the basis of his/her disability;

2. Reinstate the Plaintiff to her former position or award front pay in lieu thereof;

3. Order that the Plaintiff be awarded any back pay she would have earned, including fringe benefits, with related monetary benefits and interest thereon, absent Defendant's unlawful acts;

4. Award the Plaintiff compensatory damages, consequential damages, and lost wages and benefits in an amount sufficient to compensate Plaintiff for the damages caused by the Defendant's wrongful actions;

5. Award the Plaintiff punitive damages;

6. Award the Plaintiff his attorney fees, litigation expenses and costs incurred as a result of this action;

7. Award the Plaintiff pre- and post-judgment interest on all sums recoverable;

8. Grant such other relief as may be just and proper.

Respectfully submitted,

/s/Benjamin R. Aylsworth
Benjamin R. Aylsworth, Attorney No. 29817-87
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana  47708
Telephone:	(812) 424-1000
Facsimile:	(812) 424-1005
Email:	baylsworth@bdlegal.com
	ad@bdlegal.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff, Angalee Morrison, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

/s/Benjamin R. Aylsworth
Benjamin R. Aylsworth, Attorney No. 29817-87
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana  47708
Telephone:	(812) 424-1000
Facsimile:	(812) 424-1005
Email:	baylsworth@bdlegal.com
	ad@bdlegal.com

*Attorneys for Plaintiff*